**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 1:11-CR-12-KD-N** |
| | } | |
| **TONY ERIC MOSLEY,** | } | |
| | } | |
| **Defendant.** | } | |

## DEFENDANT'S TONY ERIC MOSLEY AND JAMES ANTHONY GOINS MOTION FOR JUDGMENT OF ACQUITTAL

Pursuant to Federal Rule of Criminal Procedure 29, Defendant's Tony Eric Mosley and Tony Goins request that the Court enter a judgment of acquittal on all counts pending against them in the Second Superseding Indictment.

### CONSPIRACY: COUNT FOUR

Under 18 U.S.C. § 371, "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

To sustain a conviction under § 371, the Government must prove that "(1) two or more persons in some way agreed to try to accomplish a shared and unlawful plan; (2) the defendant knew the unlawful purpose of the plan and willfully joined in it; (3) during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and (4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy." ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS – CRIMINAL 13.1 (2011).

1

## THE ANTI-KICKBACK COUNTS

In the light most favorable to the Government, it must prove the following elements in order to sustain a conviction under 42 U.S.C. § 1320a-7b(b):

1.   The defendant knowingly and willfully offered, paid, solicited, or received a kickback;
2.   The kickback was offered, paid, solicited, or received to induce or in exchange for the referral of a patient insured by a federal healthcare program; and
3.   The patient's services were covered, in whole or in part, by a federal healthcare program.

(Doc. #484 at 23) (as modified).

**First**, a "kickback" is "the secret return to an earlier possessor of part of a sum received." (Vernon Doc. 360 at 5) (quoting United States v. Porter, 591 F.2d 1048, 1054 (5th Cir. 1979)). As the former Fifth Circuit explained in Porter, that definition is consistent with "ordinary parlance" and the term as it is "commonly and ordinarily understood." Porter, 591 F.2d at 1053-54. The former Fifth Circuit adopted that definition in the context of 42 U.S.C. § 1395nn(b)(1), which – at the time of prosecution – provided as follows:

(b)   Whoever furnishes items or services to an individual for which payment is or may be made under this subchapter and who solicits, offers, or receives any
   (1)   kickback or bribe in connection with the furnishing of such items or services or the making or receipt of such payment, or
   (2)   rebate of any fee or charge for referring any such individual to another person for the furnishing of such items or services, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

Porter, 591 F.2d at 1052 (quoting 42 U.S.C. § 1395nn(b)(1)). That statute – § 1395nn(b)(1) – was the 1972 version of the Anti-Kickback Statute. See, e.g., United States v. Vaghela, 970 F. Supp. 1018, 1021 (M.D. Fla. 1997) ("On appellate review of the first prosecution under the 1972 version of the Medicare anti-kickback statute, the United States Court of Appeals for the Fifth

Circuit (prior to the creation of the Eleventh Circuit) reversed the convictions of several Miami doctors and a laboratory operator [in <u>United States v. Porter</u>]. The court concluded that the defendants' actions did not constitute 'bribes' or 'kickbacks,' as those terms are 'commonly and ordinarily understood.'").

As argued by Vernon, and adopted herein, until the Eleventh Circuit decides otherwise, <u>Porter</u> supplies the operative definition for the term "kickback" for purposes of the Anti-Kickback Statute.  In the Second Superseding Indictment, the Government has charged Mosley and Goins with offering, paying, soliciting, or receiving "kickbacks."  (Indict. ¶ 45) ("This inducement was accomplished by knowingly and willfully paying <u>kickback</u> to Lori Brill and/or H.M.S. in the form of commission payments."); (Indict. ¶ 53) ("Some of the patients Lori Brill referred to H.I.M. in exchange for these <u>kickbacks</u> were insured through federal healthcare programs.").

**Second**, Mosley and Goins re-assert their contention that – under the Anti-Kickback Statute as well as its legislative history, the cases cited by the Government, and the rule of lenity – the appropriate standard for a defendant's motivation is whether he or she was <u>primarily</u> motivated rather than merely having been motivated "at least in part."  (see Vernon Doc. #493, previously adopted).

**Third**, even if the Government proves a violation of the Anti-Kickback Statute, any remuneration – including a "kickback" – is exempt from prosecution under the employer-employee safe harbor.  42 U.S.C. § 1320a-7b(b)(3) ("[The AKS does] not apply to . . . any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services."); <u>see</u> <u>also</u> 42 C.F.R. § 1001.952(i) ("As used in section 1128B of the Act, "remuneration" does not include

any amount paid by an employer to an employee, who has a bona fide employment relationship with the employer, for employment in the furnishing of any item or service for which payment may be made in whole or in part under Medicare, Medicaid or other Federal health care programs."). As the Office of Inspector General observed twenty-years ago, "As long as a bona fide employer-employee relationship exists between the part-time employee and the employer, such a relationship falls within the scope of [the safe harbor]." 56 Fed. Reg. 35952, 35981 (July 29, 1991).

**Fourth**, Mosley and Goins re-assert their contention that – under the Anti-Kickback Statute and as applied to the facts of this case – the appropriate standard for "willfully" is whether the defendant specifically intended to violate the Anti-Kickback Statute. See Hanlester Network v. Shalala, 51 F.3d 1390, 1400 (9th Cir. 1995) ("We construe 'knowingly and willfully' in Sec. 1128B(b)(2) of the anti-kickback statute as requiring appellants to (1) know that Sec. 1128B prohibits offering or paying remuneration to induce referrals, and (2) engage in prohibited conduct with the specific intent to disobey the law."). Alternatively, to the extent that the Hanlester standard does not apply, United States v. Starks, 157 F.3d 833, 838 (11th Cir. 1998), controls: "[T]he act was committed voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law."

## THE COUNTS

### A.  COUNT FOUR: CONSPIRACY WITH MOSLEY, GOINS AND BRILL

The Second Superseding Indictment charges Mosley, from November 2007 until November 2009, with having conspired to violate the Anti-Kickback Statute with Tony Goins and Lori Brill. In support, the Government has alleged that H.I.M. paid Brill three commission

checks: (1) $13,887.64, dated December 22, 2008; (2) $29,075.22, dated July 13, 2009; and (3) $25,905.61, dated August 3, 2009.  The Government has failed to carry its burden.

1.       The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that Mosley agreed with Tony Goins and Lori Brill to try to accomplish a shared and unlawful plan.  At best, the Government has proven only that Mosley merely associated with Tony Goins and Lori Brill, which is legally insufficient to sustain a conspiracy conviction beyond a reasonable doubt.

2.       The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that either Mosley or Goins knew the unlawful purpose of the plan and willfully joined in it.  In particular, the Government has failed to prove that either Mosley or Goins agreed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law.

3.       The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that, during the purported conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the Second Superseding Indictment.

4.       The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that any overt act, as identified in the Second Superseding Indictment, was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the purported conspiracy.

5.       The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that any of the commission checks represent a "kickback."

6.       The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that Mosley, Goins and Brill operated "secretly."

7.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that Brill ever "referred" any patients to H.I.M.

## B.   <u>COUNT FIVE</u>

The Second Superseding Indictment charges Mosley with having violated the Anti-Kickback Statute when H.I.M. paid a commission check, dated December 22, 2008, to Brill in the amount of $13,887.64.  The Government has failed to carry its burden.

1.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that either Mosley or Goins knowingly and willfully offered, paid, solicited, or received a kickback in the form of the December 22, 2008 check to HMS.

2.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that either Mosley or Goins offered, paid, solicited, or received the July 13, 2009 check as a kickback, at least in part or primarily, to induce or in exchange for the referral of a patient insured by a federal healthcare program.

3.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that the referred patient's services were covered, in whole or in part, by a federal healthcare program.  In particular, the Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that H.I.M. billed any "services" to Alabama Medicaid associated with the purportedly "referred" patient.

4.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that the commission check represents a "kickback."

5.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that there existed a nexus between payments under a federal healthcare program and the December 22, 2008 commissions check.

6

6.     The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that Brill ever "referred" any patients to H.I.M.

C.     **COUNT SIX**

The Second Superseding Indictment charges Mosley and Goins with having violated the Anti-Kickback Statute when H.I.M. paid a commission check, dated July 13, 2009, to Brill in the amount of $29,075.22.  The Government has failed to carry its burden.

1.     The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that either Mosley or Goins knowingly and willfully offered, paid, solicited, or received a kickback in the form of the July 13, 2009 check to HMS.

2.     The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that either Mosley or Goins offered, paid, solicited, or received the July 13, 2009 check as a kickback, at least in part or primarily, to induce or in exchange for the referral of a patient insured by a federal healthcare program.

3.     The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that the referred patient's services were covered, in whole or in part, by a federal healthcare program.  In particular, the Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that H.I.M. billed any "services" to Alabama Medicaid associated with the purportedly "referred" patient.

4.     The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that the commission check represents a "kickback."

5.     The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that there existed a nexus between payments under a federal healthcare program and the July 13, 2009 commissions check.

6.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that Brill ever "referred" any patients to H.I.M.

**D.**      **COUNT SEVEN**

The Second Superseding Indictment charges Mosley and Goins with having violated the Anti-Kickback Statute when Medfusion paid a commission check, dated August 9, 2009, to Brill in the amount of $25,905.61.  The Government has failed to carry its burden.

1.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that either Mosley or Goins knowingly and willfully offered, paid, solicited, or received a kickback in the form of the August 19, 2009 check to HMS.

2.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that either Mosley or Goins offered, paid, solicited, or received the August 9, 2009 check as a kickback, at least in part or primarily, to induce or in exchange for the referral of a patient insured by a federal healthcare program.

3.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that the referred patient's services were covered, in whole or in part, by a federal healthcare program.  In particular, the Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that H.I.M. billed any "services" to Alabama Medicaid associated with the purportedly "referred" patient.

4.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that the commission check represents a "kickback."

5.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that there existed a nexus between payments under a federal healthcare program and the August 9, 2009 commissions check.

6.      The Government has failed to produce any evidence – supporting a conclusion beyond a reasonable doubt – that Brill ever "referred" any patients to H.I.M.

## THE EMPLOYER / EMPLOYEE SAFE HARBOR

Mosley and Goins cannot be convicted of conspiring to violate or violating the Anti-Kickback Statute if remunerations are paid by an employer to an employee.  Based on the Government's own evidence and testimony, it is undisputed that Brill qualifies as an employee.

1.      Pursuant to the Medicaid Standard of Care, paragraph seven, pharmacies are legally required to employ case representatives.  Consistent with that mandate, the case representative is required to ensure that a patient has sufficient medications on hand.

2.      Testimony from Ashley Sprinkle, Sherry Demouey, and Sara Spencer confirm that Brill, in her capacity as employee of H.I.M., fulfilled this role.

3.      H.I.M. treated and paid Brill as an employee.  Payroll checks were prepared and taxes were withheld as with every H.I.M. employee. Form W-2s were prepared and submitted to the Internal Revenue Service and the Alabama Department of Industrial Relations.  Those Form W-2s are in the record.  Based on the testimony of Maggie Hornbuckle from the Alabama Department of Industrial Relations, Brill qualifies as an employee. Unemployment taxes were withheld from her wages and paid to her department. Brill was also listed on the employee rolls submitted to Ms. Hornbuckle's department along with all other employees of H.I.M. Brill received BCBS insurance through the H.I.M. company health benefit policy. Accordingly, BCBS viewed her as an employee for purposes of qualifying for the company health benefit plan. Finally, Brill was fired by H.I.M. on August 8, 2009. She subsequently filed for and was awarded unemployment compensation based on her employment with H.I.M. The Government

has failed to present any evidence or testimony – to support a conclusion beyond a reasonable doubt – that Brill was anything other than an employee. These facts are uncontroverted.

4.    The Government has failed to produce any evidence – to support a conclusion beyond a reasonable doubt – that either Mosley or Goins were aware of the employer-employee safe harbor at the time Brill became an employee of H.I.M.   Absent that evidence, it is impossible to conclude that either defendant attempted to skirt the Anti-Kickback Statute by structuring a "sham job."

Respectfully submitted,

Dated: Tuesday, February 7, 2012            _s Gordon Armstrong_____
Gordon G. Armstrong, III
Attorney for Eric Mosley

_/s Buzz Jordan_____
Joe Carl "Buzz" Jordan
Attorney for Tony Goins

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon all parties of record through the Court's electronic filing system this 7th day of February, 2012:

_____s Gordon Armstrong_____
Gordon G. Armstrong,III